Good morning, your honors. This case, I think, also involves simply a misapplication of the law by the district court. The facts are known to you, the evidence is known to you, and I don't want to rehash what's in the briefs. I think in a nutshell, the judge picked and chose and made judgment calls about the evidence. The evidence was not undisputed or was not agreed to. There was an expert witness that was not considered, and I think the indications are that Ms. Parenteau is entitled to a trial. The issues... Why are the officers not entitled to qualified immunity in this case? Because qualified immunity depends on reasonable or objectively reasonable conduct. Right, and what the officers knew is that there was a possible burglary or theft in progress, and they knew that Johnson had grown up in the house, but that his parents were far away, and to me it's completely consistent to think that he was their child and grew up there and that he still might be stealing things that he had no authority to do. So, I'm not really sure why they didn't have the authority to continue with their investigation. I think that's the crux of the error in the district court. It's not that simple. It's not simply, here was a person who was identified as a former resident, he acknowledged that he no longer lived there, he had an explanation, he was there to move his belongings, and so on. And they didn't have to believe that, right? They didn't have to believe him, but the standard is totality of the circumstances. And there was nobody, as far as I could tell from what I read here, who was able to say that in fact he had authority to take belongings out of the house. There was lots of evidence that he was the person who used to live there and he was a nice person, but none of that contradicts the... I mean, you know, when I go off on vacation, I love my adult daughter dearly, but she doesn't have permission to come and start taking stuff out of the house. And there was nothing that suggested that he did. Well, I don't know that that's the case, and I think an instructive case is Struckman, which creates an obligation on the part of the responding officer to do a reasonable investigation. Well, but I guess what I'm suggesting is that there was nobody there who knew whether he had permission to take the belongings, so they can investigate and investigate, but it's not going to change what they knew from what I've read here. Well, let me have you consider some of these facts. The suspect offered to have them call his mother. They didn't do that. She was in New Zealand, I thought. That's true, but they made no effort to contact her, and she was reachable by phone, at least in theory. We don't know whether or not she would have been reached. We do know that an hour or so later, when Jennifer Parenteau tried to reach her, she did not answer her phone. But there was no effort to do that investigation. Don Callahan, a neighbor, said, this is Eric, he lives here, he's okay. That was ignored. Well, no, what I'm suggesting is that it may not have been ignored. It doesn't really speak to the question of whether he could remove the property that he was hauling away. No individual one of these things might be conclusive, and that's why totality of the circumstances is so important. Eric also told the officers, any number of the neighbors would be able to vouch for me. Those neighbors, according to the testimony, had been advised in advance that the son might be coming by to move his things. In fact, the reporting party referred to the fact that the son might be coming by to pick up and move his things. Officer Flood or Mr. Flood at the dispatch or the call-in phone was given that information. The county was actually given the information that this boy might be there moving his things. Now, the officers have taken a position, but we didn't know that because Flood didn't tell us. I think public policy makes it important that the county and its officers be responsible for the information that was available to the county. But let me read maybe one thing that would sum up all of this. The testimony from Officer Silva or from Ms. Parenteau was that when Silva barged into that bathroom, he said, we have a situation out here. That's in the excerpt of record at page 436. When Parenteau stepped from the shower to the sink area of the bathroom to be confronted by Silva and Sanders, Silva's next words were, we need to know who that is outside. There's a reference. In response to Parenteau's next question, who are you talking about? Silva replied, we need to know who that is moving. When Parenteau asked Eric, Silva said, we need to identify who that is outside. Silva, and this is my argument, Silva not only showed no interest in who Parenteau was or what she was doing there, but when she started to explain her presence, Silva said, quote, we know you are house sitting. We need to know Eric's identification. Because he was the one who was taking the stuff. The entry into the house was to ask questions about Eric. And so that's what makes it an improper, unconstitutional entry. There was no exigency. There was no legitimate. That's my issue is that while they may have had probable cause to believe that there was a robbery going on, I'm not sure, they attempt to justify their warrantless entry and search of the home by exigent circumstances. That's their argument. And that's where I think the focus of this is. I mean, were there really exigent circumstances that justified entry to the home? Well, I think that's one of them. And I certainly think that's key. I think, though, the failure to investigate under the Struckman standard is important. They could have tried to call Eric's mom. They could have talked to Marie. They could have probed further with Callahan. They could have looked into the truck to see if it was consistent. They could have called Mr. Flood to say, do you have any additional information? All of these failings in terms of their investigation were testified to by Andrew Hall, who was from 2002 to 2010 the chief of police of the city of Westminster, California, a man with 30 years experience. He said that was improper. Now, whether or not the trial judge's conclusion could be supported isn't the question. Is it the only reasonable conclusion? And based on expert testimony, that conduct was improper. Based on a totality of the circumstances as a jury might see it, that conduct was improper. And then we get to the question, if we get by that hurdle, that they did have probable cause to believe a crime was being committed, do they have exigency? A separate standard. The home, as we know, is the most sanctified place that we have. There is a presumption of unconstitutional behavior to enter a home without a warrant. There is a very high burden, and the word high burden, words high burden, have been used over and over in the courts of appeal and by the Supreme Court. To overcome the presumption of unconstitutional entry, you have to articulate very specific facts. The testimony in this case was we weren't concerned about destruction of evidence, harm to people, whatever. We went in to avoid escape of a criminal. That's not what Silva said. That creates a key disputed issue of fact that should be addressed by a jury. You have about a minute and a half if you'd like to save some rebuttal time. I'll do that. Thank you. May it please the Court, Ricky Sanchez, Office of County Counsel, on behalf of the appellees in this matter. The District Court properly granted summary judgment to the defendant, County of San Diego, Raul Silva and Derrick Sanders in this matter, because probable cause and exigency existed in conjunction with their response to the law. I'd like you to address exigency. I think probable cause is an easier issue, at least in my mind. What is the exigency? Once Johnson is cooperative and is under restraint outside, and he's the one who's hauling away the stuff, where's the exigency? The exigency has to do with the fact that during the contact with Mr. Johnson outside, he not only confirmed that he was not an occupant resident of the house, but he also indicated that there were other persons inside the house. The officers knew that. They knew there was a caretaker, and as your opposing counsel pointed out, that was what they said. We know you're the house sitter of the house. I'm interested in Judge Graber's question, too, and just to give more context, am I right that at the time they actually entered the house, Johnson had plastic cuffs and was sitting inside the patrol car? Johnson was in the patrol car, secured. Handcuffs, right? In handcuffs at the time that they entered into the residence. So there's no exigency with respect to Johnson? Mr. Johnson. So what other evidence is there that the police could reasonably assume that anybody, if confronted, would flee or offer armed resistance under the Prudence case? The information that they had in that respect is that Mr. Johnson had indicated that a woman and a child were inside the house. They knew that. They knew there was a housekeeper in the house. The issue as to whether or not she was or was not a housekeeper has to do with the characterization that Mr. Johnson later provided and she provided, which the officers are not entitled or obligated to believe at the time, no more than they're obligated to believe that he had permission to remove any property. Let me ask you, once they had Johnson secured there, what prevented them from getting a warrant? Very good. That was one of the alternative. You think my question's good? Thank you. Very good question, Your Honor. That is one of the issues that the plaintiff's expert suggested. They suggested that the house be surrounded and secured and that the officers go to a court and secure a warrant. Or a telephonic warrant. I assume those are available. In Mr. Hall's deposition and opinion, he didn't specify one way or the other. But the significance of the alternative suggestion that's made by the plaintiff's expert makes two assumptions that we have to consider. One, that there was probable cause to obtain the warrant. And two, the requirement of surrounding the house demonstrates that there is a concern regarding the presence of other people inside the house that needed to be secured to avoid escape and danger to surrounding neighbors. Why didn't they just ask Mr. Johnson, do you have any problem if we go in the house and check things out? Or why didn't they knock on the door and say, anybody here? Can we come in? Your Honor, with respect to the first question, Mr. Johnson did in fact suggest that it was okay for the officers to go inside the house. Where is that in the record? It was, I can't right off the top of my head cite to the excerpt of record, Your Honor, but Mr. Johnson did in fact, according to Raul Silva, say that it's okay to go in. The response to that is, if he's not a resident of the house, then he doesn't really, there's a question as to whether or not he has authority to consent. Yeah, he doesn't have the authority to consent. So then this second question has to do with why didn't they knock on the door? The plaintiff in their opening brief suggests that there was no announcement with respect to their entry citing the fact that they didn't ring the doorbell and they didn't knock on the door. However, an announcement was verbally made at the time that they entered or before they entered that it was the Sheriff's Department personnel making the entry. That is an announcement satisfying the requirement that anyone within the house be on notice that it is a law enforcement function that is occurring. Given that we were sitting here all arguing the facts, why isn't there at least a disputed question of fact as to whether the police officers acted? After all, it's a home and a warrantless search. That's the most protected place that there is in our Constitution. With respect to whether or not there's a material issue of fact that would have precluded the issuance of summary judgment here turns to the facts that the officers knew at the time that they made entry into the house. Isn't there a dispute? There's disputes as to what the officers knew. No, there's a dispute that the plaintiff has just indicated during oral argument that they should have acquired more information. We're not doing a subjective test. We're doing an objective test. So under the totality of the circumstances, we're not looking at just what was told to the officers or what they knew. The totality of circumstances has to do with the totality of circumstances known to the officer at the time of the action. Not a 20-20 totality of circumstance analysis. If that were the case, you couldn't have anyone following assaults or be cats. And also, I mention that case because the plaintiff in their opening brief suggests that the issue of qualified immunity is one for a jury. Cats provides that it's an issue of law for the court to decide. How do you distinguish this case from the Ninth Circuit's opinion other than the violence in Fronts? In Fronts, the distinction here is, in fact, we cited that case for the proposition that whenever officers respond to a call of a burglary in process, that there's a natural and reasonable expectation that you would have the possibility of violence, escape, and danger to other persons. Fronts versus the city of Tacoma indicated that the police were responding to basically information that would have provided the responding officers with information or sufficient knowledge that what they were dealing with was a potential domestic dispute between two individuals who had recently got divorced and one of whom was the spouse who was hosting a party. And I believe it was the spouse that purportedly, through the judgment of the family court, awarded the house to the absent spouse. In that case, the court found that when the officers responded, they had insufficient information to indicate that a crime was ongoing, and their observations at the time of their presence at the property and the information provided by neighbors would indicate that the goings-on within that house were not criminal in nature. She was answering the door, she was welcoming guests, guests were engaging in normal party-like conduct. But the report was there was a burglary ongoing? In this particular case, the undisputed facts are that we have a 911 call from the president of the Homeowners Association, who's reported that there was a white male loading up property into a U-Haul that was backed into the driveway of a home whose owners were known to be absent. That information was confirmed by Officer Silva when he approached the scene. And going to the issue of exigency, the question of exigency has to take into account even what the officer did when he first arrived. Deputy Silva just didn't walk up to the front door. Deputy Silva parked a couple of houses away, used an adjacent structure as cover in order to approach the subject house and the suspect, who was not known at that time. The fact that he was doing that demonstrates that in response to a burglary in process situation, there is a substantial danger to the officers and to others. So as he approached, he used the structure as cover. When he contacted Johnson, he did so in a professional manner. In fact, there's no indication that Mr. Johnson had any concern with respect to the way that Deputy Silva was conducting himself. I think he said firm but polite. Pardon me? Firm but polite or something along those lines. And Mr. Johnson is not a plaintiff in this action. With respect to being firm and polite, I believe the evidence is also that in connection with Deputy Silva's contact with Ms. Parentow inside the house, she has no complaints with respect to the way he conducted himself either. Plaintiff's counsel represented an opening statement that this took approximately an hour because Parentow attempted to make a phone call to the owners of the property who she understood to be in New Zealand and wasn't able to contact them. Well, if she wasn't able to contact them, it would be unreasonable to expect that the officers would have been able to contact them, but the point being that he mentioned it took place over a course of one hour. The officers responded to the scene at 9.36 in the morning and they cleared the scene, I believe, at about 9.56, so approximately 20 minutes. Half of that was consumed in connection with their contact with Mr. Johnson awaiting cover in order to make entry into the house in response to the information that Deputy Silva had received from Mr. Johnson. So we only have a situation that transpired over approximately 20 minutes. We have firm and polite conduct on the part of the officers. At the time that Deputy Silva is there, he has sufficient information and observation to come to a reasonable conclusion, as a reasonable officer could, that there was a probable cause to believe that there was burglary and presence of an unknown person. We don't know what's going on with that person, whether they're taking property, whether they're destroying things, or whether they're going to escape and cause a threat to surrounding neighbors requiring the entry into the house. Thank you, Counsel. Thank you. Let me use my last two minutes to just simply address some of the factual representations that were just made. Number one, the house was easily secured. It was not a matter of surrounding the house and so on. It was visible and could have been easily secured. There is abundant case law that says if a scene can be secured while a warrant is sought, then there is no exigency. As far as the statement, we know you're house sitting, they entered this house to ask questions about Eric. That's the testimony from Raul Silva. We entered the house, or that's the testimony from Parenteau. She was told, we entered this house knowing you're the house sitter to ask questions about Eric. That is not exigency. Counsel suggests that there's an assumption by Mr. Hall that there would have been probable cause to get a warrant. Well, if there's no probable cause to get a warrant, then there's no exigency. And I don't quite understand if you might go present the case to a judge and say I need a warrant to get in and the judge says I don't see the case, then there's no exigency. Johnson, number one, didn't have authority, but he appeared to have authority and may have appeared to have authority to enter, but he didn't say go ahead and go in. He was told, and this is all clear in the record, he was told we're going in. Silva testified. I didn't care what he said. We're going in. And Mr. Johnson said, well, if you go in, you'll find a lady and her baby in there. There was no consent given. As far as the information, the characterization that Mr. Sanchez has just used is wrong. The information upon which the decision of objective reasonableness is made is not the information known and relied upon by the officer. It is the available information. Thank you, counsel. Thank you. The case just argued is submitted, and we appreciate both counsel's presences.
judges: Molloy, Graber, Wardlaw